PEOPLE ex rel. NUGENT y. BOARD OF SUP'RS OF ONEIDA COUNTY.

(Supreme Court, Special Term, Oneida County. November, 1909.)

SHERIFFS AND CONSTABLES (§ 39*)—COMPENSATION OF SHERIFF—"CARE, SUP-
ERVISION, AND MAINTENANCE" OF PRISONERS—DUTY TO PROVIDE MEDI-
CINES.

Laws 1898, c. 321, § 4, as amended by Laws 1901, c. 666, § 2, provides
that the board of supervisors of Oneida county shall allow the sheriff's
bills for the "care, supervision, and maintenance" of prisoners in the
county jails; such care, provision, and maintenance being defined to in-
clude board, washing, and every charge of any nature, which can legally
be made in connection with the prisoners. *Held*, that the provision ap-
plies to the things and services which the sheriff is to furnish of a similar
nature to the things specified, and does not include drugs, medicines, and
medical and surgical supplies furnished by the order of the jail physician;
the sheriff not being liable for such articles.

[Ed. Note.—For other cases, see Sheriffs and Constables, Dec. Dig. §
39.*

For other definitions, see Words and Phrases,. vol. 1, p. 973; vol. 5, p.
4283.]

Action by the People, on the relation of Thomas F. Nugent, against
the Board of Supervisors of Oneida County. Judgment for defend-
ant.

W. A. Matteson, for relator.
John E. Mason, for respondent.

DEVENDORF, J.  The relator furnished drugs, medicines, and
supplies for the use of the prisoners confined in the Utica jail during
the years 1908 and 1909. He did this largely upon the written prescrip-
tion of the jail physician. Subsequently he presented to the respond-
ent the bills therefor, which, when presented for audit, bore the in-
dorsement of approval of the jail physician. Heretofore similar bills
have been paid by the county of Oneida without question; but, in view
of the peculiar language of section 4 of chapter 321 of the Laws of
1898, as amended by chapter 666, § 2, of the Laws of 1901, the board
of supervisors deemed it well to have a judicial construction thereof
before any further or other bills of the nature of those under consid-
eration were allowed or paid.

The facts involved in this controversy are admitted, and the only
question presented to the court for determination is whether such
drugs; medicines, and supplies necessary for the benefit and use of
the jail prisoners, furnished upon the prescription of the jail physi-
cian, should be paid for by the sheriff and come within the "care, su-
pervision, and maintenance," which it is the duty of the sheriff to pro-
vide, as defined by said statutes. The provision of the statute re-
quiring construction is as follows:

"The board of supervisors of Oneida county. shall, at each annual session,
audit and allow the bills of the sheriff of said county for the supervision and
maintenance of prisoners confined in the jails of said county, whose care and
maintenance shall be a county charge at a sum of not less than $1.75 nor more
than $2.25 per week for each prisoner confined without labor in the jails of

said county, and the said board of supervisors shall also allow an additional sum for such care and maintenance of not less than fifty cents nor more than seventy-five cents per week for each prisoner who shall actually be employed at hard labor, without the said jails or jailyards. And the said sheriff shall present to said board an itemized bill showing the names of the prisoners, and the actual time each was confined in said jails as a county charge, and whether employed or unemployed, and the actual time each prisoner was employed and the place and kind of labor at which each was employed. Care, supervision and maintenance shall include the board, washing, service and every charge of any name, nature or description which can or may legally be made in connection with said prisoners, from the time of their confinement in said jails until their discharge."

The respondent contends that, during the period in which the relator furnished and supplied said drugs and medicines, the sheriff was allowed and paid by the county $2.25 per week for the care, supervision, and maintenance of each prisoner confined in said jail, which sum was in full for every charge of any name or nature which could be made in connection therewith.

It is the duty of the board of supervisors of each county to appoint some reputable physician, duly authorized to practice medicine, as the physician to the jail of the county. If there is more than one jail, they must appoint a physician to each. The physician to a jail holds his office at the pleasure of the board which appointed him. Code Civ. Proc. § 126, now Prison Law (Consol. Laws, c. 43) § 348. The jail physician attending prisoners at the jail deemed it necessary that they should be supplied with certain drugs, supplies, and medicines; and, upon his order or prescription, they were furnished by the relator. To whom shall he look for the compensation which is certainly due him from some source? The prisoners were dependent upon the county for necessaries, whether they were provisions, clothing, warmth, opportunities for cleanliness, sanitation, medicines, drugs, medical or surgical attendance, with the necessary supplies and treatment accompanying or following.

The statute relates only to the bill of the sheriff for care, supervision, and maintenance. He is to have the supervision and care of the prisoners and is to maintain them in the jail. Care, supervision, and maintenance are defined in the act to "include board, washing, service and every charge of any name, nature or description which can or may legally be made in connection with said prisoners from the time of their confinement in said jail until their discharge."

I think this language applies to the things and services which the sheriff is to furnish and be a party to, within the intent and meaning of the act. It includes board, washing, services, and every charge of any name, nature, or description which can or may legally be made by the sheriff in connection with said prisoners. This statute defines what care, supervision, and maintenance shall include, namely, board, washing, and services; and it then generalizes as to every charge of any name, nature, or description which can or may legally be made in connection with said prisoners.

The literal language of the statute in that regard, generalizing and indefinite as it is, should not be construed into meaning every charge in connection with said prisoners from the time of their incarceration

until discharged, and that the sheriff shall be responsible to pay therefor, because the same statute upon which the respondent relies provides for payment for other services to the prisoners; for instance, the jail physician, who renders his services to the prisoners, is paid by the county. A jailer is provided at a salary of $800 a year, additional deputies are provided where the prisoners are employed at labor, and there are other instances provided by law where services are rendered for the prisoners which are concededly not within the contemplation of the language of the statute in controversy here. I think the general words, above mentioned, in the statute, refer only to those things of a similar or like nature specifically mentioned, namely, board, washing, services. They do not mean, nor can they include, every conceivable thing which might be required in connection with the prisoners at the jail, but only the things of a similar class or nature as those previously specifically mentioned. Matter of Soule, 72 Hun, 594, 25 N. Y. Supp. 270; Matter of Tilden, 98 N. Y. 434; McGaffin v. City of Cohoes, 74 N. Y. 387, 30 Am. Rep. 307.

Under settled rules of interpretation, these general words must be interpreted to mean care, supervision, and maintenance, as applied to board, washing, and services of every name and description. It certainly could not have been the intention of the lawmakers to hold the sheriff responsible for the drugs, medicines, druggist's supplies, and medical as well as surgical attention, and the treatment which might necessarily be involved in or follow a difficult or hazardous surgical operation. I think, if the Legislature had so intended, it would have said that such care and maintenance should, in addition to the board, washing, and services, include drugs, medicines, and druggist's supplies. It did not intend to say so, and consequently did not place language in the statute which calls upon the sheriff to furnish further or other than all necessary services and supplies attending board, washing, and services in connection with care and maintenance. The sheriff could in no way control the quantity of medicines to be furnished, unless he should forbid their delivery at the jail. He could in no other way limit the service and medical supplies for which he would be called upon to pay. This would present a condition of things undesirable.

I have come to the conclusion that the statute in question simply provides that the allowance to the sheriff for maintenance, board, and care shall cover board, washing, services, and any and all charges which he can make in connection therewith, and that drugs, medicines, medical and surgical supplies, furnished upon the order of the jail physician, are not to be paid for by the sheriff, and are not chargeable to him, but are a county charge if properly proven. I do not say that all of the many items in relator's bills are within the above class, but that question is not before me now.

The form of the order to be entered, if not agreed upon, will be settled on two days' notice.

Ordered accordingly.